UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GLORIA BENAVIDES, *on behalf of herself,*   :
*FLSA Collective Plaintiffs and the Class,*   :
:
Plaintiffs,   :
:
- against -   :
:
SERENITY SPA NY INC., *et ano.,*   :
:
Defendants.   :
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED:   8/3/16

**MEMORANDUM
ORDER**

15-CV-9189 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

On November 20, 2015, plaintiff Gloria Benavides, on behalf of herself and

"others similarly situated," brought this action for unpaid wages, including failure

to pay the proper minimum wage and overtime compensation, under the Fair Labor

Standards Act and New York State Labor Law against defendants Serenity Spa NY

Inc. and Yu Qun Dai.  Benavides alleges that these wage-and-hour violations took

place while she was employed as a nail technician and massage therapist at

Serenity Spa NY, which is located in Manhattan, from January 2012 to January

2013 and again from August 2014 to August 2015.  Benavides has now moved for

conditional collective action certification on behalf of all non-exempt employees of

defendants and asks that the Court (1) conditionally certify the FLSA claims and

approve the issuance of a collective action notice; (2) approve the proposed notice

and consent form; (3) direct that the consent forms of opt-in plaintiffs be sent

directly to Benavides' counsel; (4) require defendants to post the notice and consent

forms in their place of business; and (5) require defendants to disclose the contact

1

information for all potential members of the collective action as well as the Social Security numbers of all potential members for whom the notice is returned as undeliverable. Defendants have opposed the motion on various grounds. For the reasons that follow, Benavides' motion is granted in part and denied in part.[1]

In addition to the pending motion for conditional collective action certification, the parties have raised a discovery dispute regarding whether production of contact information and documents relating to the compensation of all non-exempt employees of Serenity Spa NY within the last six years is appropriate. Because the Court grants the motion for certification, Benavides is entitled to production of contact information and documents relating to compensation for all employees who fall within the scope of the conditionally certified collective action. The Court also grants Benavides' request to use class payroll data that was previously produced in furtherance of a mediation that was scheduled between the parties but ultimately did not take place. Finally, as to non-exempt employees who do not fall within the conditionally certified collective action, the Court grants production of wage-and-hour documents, tip records, records relating to defendants' commission payments, and production of text messages between employees and

---

[1] As other courts have pointed out, in contrast to the requirements of Rule 23 pertaining to class actions, "neither the FLSA nor the Federal Rules of Civil Procedure provide for the certification of an FLSA collective action." *Amendola v. Bristol–Myers Squibb Co.*, 558 F.Supp.2d 459, 463 n.1 (S.D.N.Y. 2008); *see also Tate v. WJL Equities Corp.*, No. 13-CV-8616 (JLC), 2014 WL 2504507, at *1 n.1 (S.D.N.Y. June 3, 2014); *Diaz v. S & H Bondi's Dep't Store, Inc.*, No. 10-CV-7676 (PGG), 2012 WL 137460, at *1 n.1 (S.D.N.Y. Jan. 17, 2012). While Benavides has styled her motion as one for "conditional certification," it is more appropriately characterized as a request for the Court to authorize notice to potential opt-in plaintiffs. *Id.*

defendant Dai, but denies production of their contact information without prejudice to renewal upon a demonstration of need.

## I.    PROCEDURAL HISTORY

The parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c) on February 18, 2016.  (Dkt. No. 17).  On April 28, 2016, Benavides filed a letter-motion requesting a pre-motion conference, to be held simultaneously with a previously scheduled initial conference, in order to seek leave to move for conditional collective action certification under the Fair Labor Standards Act ("FLSA").  (Dkt. No. 32).  Defendants opposed this request.  (Dkt. No. 33).  The Court held a conference on May 4, 2016 and set deadlines for motion practice on Benavides' motion for conditional collective action collective certification.  (Dkt. No. 34).

On May 31, 2016, Benavides moved for conditional certification of a putative class of all non-exempt employees (including, but not limited to, nail technicians, massage therapists, aestheticians, and other spa technicians) employed by defendants at Serenity Spa NY within the last six years.  *See* Notice of Motion, dated May 31, 2016 (Dkt. No. 41); Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification, dated May 31, 2016 ("Pl.'s Mem.") (Dkt. No. 42); Declaration of C.K. Lee in Support of Plaintiff's Motion for Conditional Collective Certification, dated May 31, 2016 ("Lee Decl.") (Dkt. No. 44).  Defendants filed their opposition papers on June 14, 2016.  Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Class Certification ("Defs.' Mem.")

(Dkt. No. 45). Benavides submitted a reply on June 30, 2016. Reply Memorandum of Law in Support of Plaintiff's Motion for Conditional Collective Certification ("Pl.'s Reply") (Dkt. No. 49).

## II.   DISCUSSION

### A. Conditional Collective Action Certification

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus allowing other "similarly situated" employees the opportunity to join the litigation. 29 U.S.C. § 216(b); *see also Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). "Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

In this Circuit, there is a two-stage certification process for an FLSA collective action. *See, e.g., Martin v. Sprint/united Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016) (collecting cases). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. The Court may send this notice after "only a 'modest factual showing' based on the 'pleadings and affidavits' that the putative class members were 'victims of a common policy or plan

4

that violated the law.'" *Feng v. Hampshire Times*, No. 14-CV-7102 (SHS) (JLC),

2015 WL 1061973, at *2 (S.D.N.Y. Mar. 11, 2015) (quoting *Cardenas v. AAA

Carting*, No. 12-CV-7178 (VB), 2013 WL 4038593, at *1 (S.D.N.Y. Aug. 9, 2013)

(internal quotations omitted)); *see also Myers,* 624 F.3d at 555 (citations omitted);

*Scott v. Chipotle Mexican Grill, Inc.,* No. 12-CV-8333 (ALC), 2013 WL 5782440, at

*2 (S.D.N.Y. Oct. 25, 2013) (collecting cases).  "In ascertaining whether potential

opt-in plaintiffs are similarly situated, courts should not weigh the merits of the

underlying claims." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y.

2013).

 "While the FLSA does not define 'similarly situated,' it is widely recognized

that the standard for conditional collective action certification is not a stringent

one." *Feng*, 2015 WL 1061973, at *2; *see, e.g.,* *Spicer v. Pier Sixty LLC.*, 269 F.R.D.

321, 336 (S.D.N.Y. 2010); *Iglesias-Mendoza v. La Belle Farm. Inc.*, 239 F.R.D. 363,

367-68 (S.D.N.Y. 2007); *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y.

1997).  A low standard of proof is required at this first stage because its "'purpose

. . . is merely to determine whether 'similarly situated' plaintiffs do in fact exist.'"

*She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3946 (PAE), 2014 WL 5314822, at

*2 (S.D.N.Y. Oct. 16, 2014) (quoting *Myers,* 624 F.3d at 555 (citations omitted)).

 Nevertheless, "while a plaintiff's 'burden of proof is low, it is not non-existent

[and] certification is not automatic.'" *Sanchez v. JMP Ventures, L.L.C.*, No. 13-CV-

7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (citing *Romero v. H.B.

Auto. Grp., Inc.,* No. 11-CV-386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1,

2012) (internal citations and quotation marks omitted)). A "plaintiff's burden under § 216(b) 'cannot be satisfied simply by unsupported assertions,' . . . or with 'conclusory allegations.'" *Id.* (quoting *Myers,* 624 F.3d at 555 (internal citations and quotation marks omitted)); *see, e.g., Morales v. Plantworks, Inc.,* No. 05-CV-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying certification where there was no support for plaintiffs' claim that they were similarly situated to other employees other than a "conclusory allegation . . . that '[t]here are over 20 current and former employees that are similarly situated to Plaintiffs . . . ."). Instead, plaintiffs "must provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated . . . ." *Qing Gu v. T.C. Chikurin, Inc.,* No 12-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014).

In the second stage, which occurs after discovery "when the Court has a more developed record, the named plaintiffs must prove that 'the plaintiffs who have opted in are *in fact* 'similarly situated' to the named plaintiffs.'" *She Jian Guo,* 2014 WL 5314822, at *2 (quoting *Myers,* 624 F.3d at 555). At this point, a defendant can move to decertify if the record reveals that the claimants are not similarly situated, and their claims may be dismissed without prejudice. *Id.*; *Myers,* 624 F.3d at 555.

### 1. Benavides' Factual Showing in Support of Conditional Collective Action Certification

In support of her motion for conditional collective action certification, Benavides has submitted a declaration outlining the wage-and-hour violations that she alleges she and her co-workers experienced, as well as documentation of defendants' payroll records, wage statements, and wage-and-hour notices for at

least some of defendants' employees. *See* Declaration of Gloria Benavides dated

May 19, 2016 ("Benavides Decl.") (Dkt. No. 43); Lee Decl., Exs. B (copies of

defendants' payroll records), C (copies of defendants' wage statements), D (copies of

defendants' wage-and-hour notices), and E (copies of defendants' payroll records).[2]

Benavides alleges that she worked as a nail technician and massage

therapist for defendants from in or about January 2012 through in or about

January 2013 and from in or about August 2014 through on or about August 3,

2015. Benavides Decl. ¶ 1. Defendants have yet to produce any records of

Benavides' hours or the wages she was paid and Benavides reports that, throughout

her employment with defendants, she was paid "off the books" in cash. Pl.'s Mem.

at 2-3; Benavides Decl. ¶ 6. She states that she regularly worked 50 hours per

week: ten hours a day for five days a week, from 9:30 a.m. to 7:30 p.m. with no

lunch break. Pl.'s Mem. at 3; Benavides Decl. ¶ 4.

Benavides further alleges that, throughout the entire course of her

employment with defendants, she was paid hourly rates that were below the

prevailing minimum wage and that she worked overtime without compensation in

---

[2] Plaintiff reports that she was paid "off the books" and that defendants did not
keep accurate records of her employment. Benavides Decl. ¶ 6. She also states that
she knew of several other employees who, like her, were paid in cash and received
no record of their wage statements, while other employees were paid by check and
received wage statements. *Id.* ¶¶ 6-7. Benavides further alleges that she learned
from conversations with co-workers that the hours represented on the wage
statements were significantly less than those actually worked. *Id.* ¶ 7.
Consequently, although the payroll records and wage statements that plaintiff has
submitted presumably shed light on the hours that some employees worked and the
wages they received, she suggests that they do not reflect the full schedules or
compensation of all employees.

violation of the FLSA and New York Labor Law ("NYLL").  Pl.'s Mem. at 4, 10.

From in or about January 2012 until in or about January 2013, Benavides was paid

$7.00 per hour, which was less than the state minimum wage of $7.25.  Pl.'s Mem.

at 4; Benavides Decl. ¶ 5.  Then, from in or about August 2014 until on or about

August 3, 2015, Benavides was paid $7.50 per hour, which was less than the state

minimum wage rates of $8.00 in 2014 and $8.75 in 2015.  Pl.'s Mem. at 4;

Benavides

Decl. ¶ 5.  Benavides claims that she never received a wage-and-hour notice or wage

statements as required under NYLL.  Benavides Decl. ¶¶ 11-12.

 As to other potentially "similarly situated" employees of defendants,

Benavides reports that she spoke with her co-workers about their work and pay

and, from these conversations and her personal observations, gleaned that "all non-

managerial employees at Serenity Spa NY were subject to the same wage and hour

policies" as Benavides.  Benavides Decl. ¶ 3.  As such, they were "similarly

compensated at straight-time hourly rates below the minimum wage" and "did not

receive proper overtime compensation for hours worked over 40 hours per week."

Benavides Decl. ¶¶ 5, 10.

 Specifically, Benavides states that she regularly spoke with at least five

named co-workers about the hours that they worked and the wages that they

received.  Benavides Decl. ¶ 3.  All five of these co-workers are or were nail

technicians and massage therapists.  *Id.*  She reports that these five employees

were subject to the same wage-and-hour policies as Benavides, including pay below

the prevailing minimum wage and lack of proper overtime compensation.  *Id.* ¶¶ 3,

10. These conversations occurred during the morning hours because, once defendant Yu Qun Dai arrived at work, she would not allow employees to speak to one another. *Id.* ¶ 3. Benavides also spoke to one of these five co-workers when they rode the subway home together after work. *Id.*

Benavides also contends that she observed and spoke with "other non-managerial employees at Serenity Spa NY" beyond the named individuals, who "work[ed] the same or similar hours," "were similarly compensated at hourly rates below the minimum wage," and "did not receive proper overtime compensation." *Id.* ¶¶ 4, 5, 10. In addition to the five individuals that she named, Benavides reports that, during her employment with defendants, there were "at least 10 to 12 other non-managerial employees . . . who were similarly paid 'off the books' in cash and not provided with wage statements" until approximately August 2015. *Id.* ¶ 6. [3]

Benavides also provided copies of payroll records and wage statements for several other employees. Lee Decl., Exs. B, C. These documents indicate that at least 12 employees were paid at hourly rates below the prevailing minimum wage. Specifically, the records show payments of hourly wages of $5.45 to $5.65 from 2010 through 2014, and of $6.00 to $8.00 in 2015. Lee Decl., Exs. B, C, D, E. Additionally, Benavides asserts that she "observed and spoke with co-workers" who were paid by check and that they complained that "they were not compensated for

---

[3] Plaintiff alleges that, when she reviewed defendants' payroll records, she saw that Yu Qun Dai "began putting everyone on payroll starting in August 2015," even if they had previously been paid off the books. Benavides Decl. ¶ 6. She notes that, for example, two of the named employees were hired in July and November 2014 respectively, but "the payroll records fraudulently state that they were both hired on August 10, 2015." *Id.*

all hours worked due to [d]efendants' time-shaving policy . . . [wherein] hours stated on their wage statements were always significantly less than their actual hours worked." Benavides Decl. ¶ 7. Consequently, "[a]lthough they regularly worked more than 40 hours per week like [Benavides], their payroll records only reflected 25 to 40 hours per week." *Id.*

Benavides also states that she never received any notice that defendants were taking a tip credit, any information about the legal requirements that defendants must meet if they take a tip credit, nor any statement of the amount of tip credit allowance that defendants took during each pay period. *Id.* ¶ 9. Based on her "personal observations and conversations," Benavides alleges that no other employee received such notices or information until August 2015. *Id.* Benavides further contends that, even after defendants began to provide wage statements and notice and acknowledgement forms in August 2015, these documents did not provide proper tip credit notice because neither indicated the tip credit amount that was deducted from employees' wages for each pay period. Pl.'s Mem. at 5; *see* Lee Decl., Exs. C, D.

In sum, although Benavides acknowledges that there were different methods of payment as well as different hourly rates paid to defendants' employees, she asserts that "[p]laintiff and all non-exempt employees suffered from Defendants' policy of (i) failing to pay the statutory minimum wage and (ii) failing to pay the proper overtime compensation, in violation of the FLSA." Pl.'s Mem. at 2.

## 2. Benavides Has Made the Modest Factual Showing Required to Support Conditional Collective Action Certification

Conclusory allegations are not sufficient to support a motion for conditional collective action certification. Plaintiffs must offer something of "evidentiary value" to demonstrate that similarly situated employees exist and, where plaintiffs "fail[ ] to meet this minimal requirement, their motion for [conditional collective action] certification [will be] denied." *Morales*, 2006 WL 278154, at *3; *see also Silva v. Calle 8, LLC*, No. 12-CV-677 (ERK) (MDG), 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013) ("where plaintiffs fail to provide either evidentiary support, such as affidavits or supporting documents, or specific factual allegations, courts routinely deny conditional certification") (collecting cases). Plaintiffs consequently must provide factual detail or evidence beyond simply alleging that they observed or spoke with other similarly situated employees. *See, e.g., Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3-4 (E.D.N.Y. Apr. 17, 2014) ("where plaintiffs fail to provide specific factual allegations, courts routinely deny leave to send a collective action notice") (collecting cases); *see also Sanchez*, 2014 WL 465542, at *2 (denying conditional collective action certification where plaintiff repeatedly stated that the "policies to which he was subjected . . . were the 'common practice'" at all defendants' restaurants and based this "on 'observations' and 'conversations' with other employees (whose first names he lists)" but failed "to provide *any* detail as to a *single* such observation or conversation"); *Qi Zhang v. Bally Produce, Inc.*, No. 12-CV-1045 (FB) (JMA), 2013 WL 1729274, at *4 (E.D.N.Y.

11

Apr. 22, 2013) ("refus[ing] to conditionally certify a collective action if plaintiff is unwilling (or unable) to offer any evidence that other [employees] had similar duties and responsibilities as plaintiff").

"Courts in this Circuit commonly authorize[] the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees." *Silva*, 2013 WL 6330848, at *3. This kind of a "factual basis" is necessary "for the court to consider whether the employees [that] plaintiffs refer to are similarly situated to them." *Gu*, 2014 WL 1515877, at *3. Specific factual allegations can include the names of similarly situated employees, their job titles, as well as information as to their duties and the hours they worked. *See, e.g., Gu*, 2014 WL 1515877, at *3; *Silva*, 2013 WL 6330848, at *3 (collecting cases); *Zhang*, WL 1729274, at *4. When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of the employees involved. *See, e.g., Sanchez*, 2014 WL 46542, at *2 ("Where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process"; otherwise "the Court is left with a list of generalized allegations . . . precisely the kind of unsupported assertions and conclusory allegations that courts in this District have found to be insufficient."); *Gu*, 2014 WL 151877, at *3 (denying conditional collective action certification where plaintiffs made "only general allegations . . . fail[ed] to provide

any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations," did not "identify the job titles or duties performed by their fellow employees" and "did not specify to which location their observations pertained'"). It is also helpful, but not necessary, when plaintiff "adduce[s] evidence beyond his [or her] own personal observations," which may be done through affidavits of other employees or other supporting documents. *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 448-49 (S.D.N.Y. 2013) (collecting cases).

Here, Benavides provides sufficient factual detail to enable the Court to conclude at least preliminarily that she is similarly situated to the other nail technicians and message therapists with whom she worked. Benavides provides the names of five other nail technicians and massage therapists who she asserts were subject to similar wage-and-hour violations. Benavides Decl. ¶ 3. She notes the time and circumstances of her conversations with the five co-workers, which occurred in the morning hours and on the subway home so as to be out of earshot of defendant Yu Qun Dai. *Id.* She reports that she learned from their discussions as well as her own observations that these co-workers worked similar hours, earned similar wages, and also were paid off the books. *Id.* In addition, Benavides provides supporting documentation of the alleged wage violations in the form of defendants' payroll records, wage statements, and wage-and-hour notices. *See* Lee Decl., Exs. B, C, D, E. These documents list the wages of 12 employees other than the five identified individuals and indicate that these 12 employees were underpaid

13

and not paid overtime.  Based on this information, the Court can fairly infer that other nail technicians and massage therapists worked similar shifts for comparable pay, whether compensated on or off the books, thereby allegedly suffering the same violations of the FLSA and NYLL.

Benavides, however, seeks certification of a much broader class – defined as "all non-exempt employees" and encompassing "nail technicians, massage therapists, aestheticians and/or other spa technicians, employed by Defendants at 'Serenity Spa NY' . . . within the last six (6) years."  Pl.'s Mem. at 1.  Although Benavides' initial submissions in support of her motion for conditional collective action certification were either conclusory as to the working conditions of other non-managerial employees[4] or provided insufficient facts to corroborate her claim that all non-exempt employees are similarly situated to her,[5] the deposition of defendant Yu Qun Dai, which Benavides submitted as part of her reply papers, supports the conclusion that all non-exempt employees were subject to similar wage-and-hour

---

[4] Plaintiff's declaration provided only conclusory allegations that, "[b]ased on [her] personal observations and conversations, other non-managerial employees at Serenity Spa NY (including but not limited to [the five named nail technicians and massage therapists])" were "subject to the same wage and hour policies," were "required to work the same or similar hours," were paid at "hourly rates that were at all times below the minimum wage," "did not receive proper overtime compensation," and did not receive "required tip credit notices."  Benavides Decl. ¶¶ 3-5, 8-11.  The declaration included no additional facts to support these allegations.

[5] While plaintiff submitted supporting documentation in the form of defendants' payroll records, wage statements and wage-and-hour notices, these records do not indicate the positions or job duties of the 12 additional co-workers that appear to have been paid below the minimum wage and without overtime compensation.  *See* Lee Decl., Exs. B, C, D, E.  Plaintiff did not supplement the records with an explanation of the positions or job duties of these individuals.

14

policies. *See*, Pl.'s Reply, Ex. A, Deposition of Defendant Yu Qun Dai, conducted

June 24, 2016 ("Dai Dep.") (Dkt. No. 49).[6]

During her deposition, Dai confirmed that all non-exempt employees at

Serenity Spa NY were paid an hourly wage from 2010 through 2016. *See* Pl.'s Reply

at 2; Dai Dep. 20:10-21:14; 29:11-30:3. She admitted that all hourly employees were

paid at similar hourly rates that were below the prevailing minimum wage at all

times. *See* Pl.'s Reply at 2; Dai Dep. 53:11-22; 56:19-23; 58:12-14; 60:7-9; 61:18-20;

63:20-22. Dai's deposition testimony also revealed that defendants provided the

same form of wage statements to all non-exempt employees from 2010 through

2016. Dai Dep. 49:13-18; 54:6-11. Finally, although Dai testified that the schedules

of her employees varied given their personal circumstances, she acknowledged that

she never paid overtime to any of her employees. Dai Dep. 9:7-12; 48:17-49:2; 71:4-

9.

The Court finds that, given this strong evidence of uniform wage-and-hour

practices regarding all employees, Benavides has established the modest factual

basis that is necessary for the Court to determine preliminarily that all of

defendants' non-exempt employees were subject to a common unlawful policy or

plan and thus are similarly situated to Benavides. The fact that the employees held

different positions does not prevent conditional collective action certification

because courts in this Circuit "routinely find employees similarly situated despite

not occupying the same positions or performing the same job functions and in the

---

[6] Benavides originally submitted excerpts of the deposition. At the Court's request,
Benavides ultimately provided the entire transcript for the Court's consideration.

15

same locations, provided that they are subject to a common unlawful policy or practice." *Guaman v. 5 M Corp.*, No. 13-CV-03820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) (internal quotation marks and citations omitted) (collecting cases).  The Court accordingly grants conditional collective action certification for all non-exempt employees of defendants at Serenity Spa NY.  This certification encompasses nail technicians, massage therapists, aestheticians, and/or other spa technicians who worked at this establishment.

### B. Notice and Consent Form

The Court has the discretion, under the FLSA, to "implement § 216(b) . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers*, 624 F.3d at 554.  Benavides has submitted a proposed notice of this FLSA action to the Court for its consideration as well as a consent form and requests that the Court (1) approve issuance of a collective action notice; (2) approve the proposed notice and consent form; (3) direct that the consent forms of opt-in plaintiffs be sent directly to Benavides' counsel; (4) require defendants to post the notice and consent forms in their place of business; and (5) require defendants to disclose the contact information for all potential members of the collective action as well as the Social Security numbers of all potential members for whom the notice is returned as undeliverable.  I will address each of these issues in turn.

### 1. Time Period for Conditional Collective Action Certification

Benavides seeks to send notice to all non-exempt employees who worked at Serenity Spa NY within six years of the date of the complaint. Pl.'s Mem. at 1. Defendants object to this time frame, arguing that, because the maximum statute of limitations for willful violations of the FLSA is three years, any notice should only extend back two to three years.[7] Defs.' Mem. at 15-16. Defendants additionally argue that the notice period should be calculated from the date of any order granting conditional collective action certification as opposed to the date of the complaint. *Id.*

"Courts in this Circuit have approved both three—and six-year notice periods, depending on the facts." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013) (collecting cases). "Cases adopting six-year periods have been based on supposed 'economy of providing notice to plaintiffs with FLSA claims who may also have NYLL claims subject to a six-year statute of limitations,' while cases using three-year periods 'have cited the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.'" *Ramos v. Platt*, No. 1:13-CV-8957 (GHW),

---

[7] Defendants' memorandum confusingly requests that, if the Court were to grant plaintiff's motion for conditional collective action certification, it "should limit the notice to three years prior to the filing of Plaintiff's complaint" but also that "the Court should order Notice to be sent to prospective class members who were employed by Defendants two (2) years preceding the date of the Court's Order." Defs.' Mem. at 15-16.

2014 WL 3639194, at *4 (S.D.N.Y. July 23, 2014) (citing *Trinidad*, 962 F. Supp. 2d at 564).

Several decisions have found the latter rationale more persuasive, "particularly where no motion for class certification of the NYLL claims is simultaneously pending." *Id.* ("Because the only purpose of permitting notice in these circumstances is to notify and inform those eligible to opt in to the collective action, there is no purpose in sending notice to employees whose claims would be time-barred under the FLSA.") (internal citations and quotation marks omitted); *see also Ramos v. PJJK Rest. Corp.*, No. 15-CV-5672 (PKC), 2016 WL 1106373, at *5 (S.D.N.Y. Mar. 10, 2016) ("plaintiffs have not moved to certify a class under the NYLL . . . [and] do not explain how efficiency or judicial economy are enhanced if the collective action notice includes a six-year limitations period for NYLL claims that have not received class certification"). Others have declined to permit a six-year notice period on grounds that it "would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Hamadou,* 915 F. Supp. 2d at 668. Instead, "[i]f a class is certified under New York law, class members will receive notice at that time through the class action notification process." *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015).

Those cases that have permitted a six-year notice period have done so on the basis of efficiency and where the notice itself mitigates possible confusion. Several courts have found that, where there are potential claims under NYLL and "the

number of Plaintiffs and potential plaintiffs as represented does not appear to be very large," such that "[r]equiring Defendants to provide the requested information will not be 'unduly burdensome or disruptive to [D]efendant's business operations,'" "it seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible." *Avila v. Northport Car Wash, Inc.*, 774 F. Supp. 2d 450, 456 (E.D.N.Y. 2011) (internal quotation marks and citations omitted) (collecting cases); *see also Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410-11 (S.D.N.Y. 2012) (collecting cases); *Hallissey v. Am. Online*, No. 99-CV-3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb. 19, 2008) ("In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to the [opt-in plaintiffs] while minimizing disturbance to [defendant's] business."). Courts have found that a six-year notice period is appropriate where the "notice adequately describes that there are claims under New York law and that these claims, unlike the FLSA claims, have a six-year statute of limitations." *Winfield*, 843 F. Supp. 2d at 411; *see also Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10-CV-7557 (JGK), 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) ("The notice adequately describes that there are claims under New York law and that these claims, unlike the FLSA claims, have a six-year statute of limitations.").

Here, Benavides offers factual evidence that would support claims under NYLL and she anticipates making a Rule 23 class certification motion. *See* Pl.'s Letter to the Court, dated June 29, 2016, at 2 (Dkt. No. 48). It also appears from an examination of the payroll records and wage statements that Benavides provided

19

that the number of potential plaintiffs is unlikely to be very large.  There may

therefore be some efficiency in permitting Benavides to collect information about

potential plaintiffs with NYLL claims at this stage, given the apparently limited

burden on defendants.

However, Benavides' proposed notice does not adequately delineate the

different statutes of limitations that apply to claims under the FLSA and NYLL.

Instead, the proposed notice simply states in a footnote that: "The lawsuit also

includes a class action claim under the New York Labor Law ('NYLL').  This Notice

applies only to the FLSA claim, not to the class action claim brought under the

NYLL."  Lee Decl., Ex. A at 1.  There is thus nothing to mitigate confusion for

employees who are ineligible for the FLSA collective action but nevertheless receive

an opt-in notice that professes not to relate to any NYLL claims.

Accordingly, the Court directs that notification be sent to all non-exempt

employees who worked at Serenity Spa NY in the three-year period before the filing

of the complaint.[8]  If Benavides wishes to expand the time period for notice, she

may submit a revised notice consistent with the schedule set forth at the conclusion

---

[8] A number of courts in this Circuit "have concluded that the determination of
tolling issues for . . . eventual opt-ins should be dealt with after the notice and opt-
in period has concluded" and as such "routinely approve notice periods going back
three years from the filing of the complaint even though that time period can
substantially exceed the statutory limitations period, which runs three years from
the filing of an opt-in consent . . . .  This approach thus leaves room for opt-ins to
pursue a request for tolling based on their own specific circumstances."  *Barrett v.
Forest Labs., Inc.*, No. 12-CV-5224 (RA) (MHD), 2015 WL 6437494, at *1-2 (S.D.N.Y.
Oct. 5, 2015) (collecting cases).  The Court likewise "decline[s] to limit the scope of
the notice based on an assumption that future opt-ins . . . will be unable to
demonstrate a basis for tolling."  *Id.*

of this Memorandum Order.  The revised notice should explain that there are NYLL claims and adequately delineate the different statutes of limitation for the FLSA and NYLL.

### 2.  Consent Forms May Be Sent to Benavides' Attorney

Benavides also requests that the Court direct opt-in forms to be mailed to Benavides' counsel as opposed to the Clerk of the Court.  Pl.'s Mem. at 14. Benavides contends that this is necessary because "[r]equiring opt-in claimants to file their forms with the Clerk discourages participation and prohibits Benavides' counsel from conducting his investigation and contacting his own possible clients." *Id.*  Benavides' counsel also contends that, in his experience, filing the opt-in forms with the Clerk "causes unnecessary delay," which may in turn "chill[ ] claimants who otherwise expect to be immediately contacted" and frequently can impede Benavides' counsel from reaching itinerant workers when counsel finally receives their contact information.  *Id.*

"Courts in this District are split on this issue."  *Martin*, 2016 WL 30334, at *18.  Some have required "consent forms to be mailed to the Court because of concerns that a contrary ruling might discourage opt-in plaintiffs from retaining their own counsel . . . and others [have] approv[ed] notices that required consent forms be sent to plaintiffs' counsel."  *Hernandez v. Fresh Diet Inc.*, No. 12-CV-4339 (ALC) (JLC), 2012 WL 5936292, at *2 (S.D.N.Y. Nov. 21, 2012) (internal citations omitted); *see also Martin*, 2016 WL 30334, at *2 (noting this split but also stating that "[t]he majority of courts, however, have directed opt-in plaintiffs to mail the

consent forms to plaintiffs' counsel"); *She Jian Guo*, 2014 WL 5314822, at *5 (stating the same and that "[d]oing so is particularly appropriate here because the Notice explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney . . . mitigating concerns that putative class members may be discouraged from retaining their own counsel").

While this Court previously concluded that "consent forms should be returned to the Clerk of the Court in order to ensure that opt-in [p]laintiffs understand that they may choose their own counsel without being influenced by having to return the form to [p]laintiffs' counsel," *Hernandez*, 2012 WL 5936292, at *2, the Court is now of the view that, as long as the notice makes explicit that opt-in plaintiffs can retain their own counsel if they choose, as the proposed notice here does, then it is acceptable and less cumbersome to have opt-in notices sent directly to plaintiff's counsel. The Court accordingly approves Benavides' request that the notice direct potential plaintiffs to mail consent forms directly to her counsel and indicate whether they agree to be represented by plaintiff's counsel or will retain separate counsel (or represent themselves).

### 3. Benavides' Notice Must Include Contact Information for Both Plaintiff's and Defendants' Counsel

Consistent with the Court's directive that opt-in forms be sent directly to plaintiff's counsel, the notice of collective certification should include contact information for both plaintiff's and defendants' counsel. The Court agrees with other "courts in this Circuit[, which] have generally concluded" that the contact information of defendants' counsel "is appropriate for inclusion in a notice of

22

collective action." *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015); *see also Martin*, 2016 WL 30334, at *17; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011); *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629 (KPF), 2013 WL 5211839, at *7 (S.D.N.Y. Sept. 16, 2013).

This contact information should be set apart in two separate sections. *See Mendoza v. Ashiya Sushi 5, Inc.*, No. 12-CV-8629 (KPF), 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 16, 2013) (approving notice that sets out plaintiff's and defendant's counsel's contact information in separate sections); *Whitehorn*, 767 F. Supp. 2d at 451 (approving inclusion of defense counsel's contact information but requiring that it "be placed in a separate section entitled 'Attorneys for Defendants'"). The first section should state that, if a potential plaintiff joins this suit and agrees to be represented by the named plaintiff through her attorney, he or she will be represented by Lee Litigation Group PLLC and provide plaintiff's counsel's full names, mailing address, and phone number. The second section should state that defendants in this case are represented by Hang & Associates, PLLC, provide counsel's full names, mailing address, and phone number, and include the following language: <u>If you decide to join this case, you should not contact the defendants' lawyer but instead rely on your counsel to do so.</u> *See, e.g., Cohan v. Columbia Sussex Mgmt., LLC*, No. 12-CV-3203 (JS) (AKT), 2013 WL 8367807, at *13 (E.D.N.Y. Sept. 19, 2013) (approving inclusion of such language in light of the obligation for opposing counsel to avoid unauthorized contact with represented

parties), *aff'd*, No. 12-CV-3203 (JS) (AKT), 2016 WL 1045532 (E.D.N.Y. Mar. 15, 2016).

### 4.  Consent Forms Should Be Posted at Defendants' Place of Business

Defendants object to Benavides' proposal that the notice and consent forms be posted at their place of business. Def.'s Mem. at 16. They argue that, if notice is to be approved, "posting notices is not necessary if there is no proof that first class mail would be insufficient" and Benavides here "has made no [such] showing . . . at this stage." *Id.*

"Courts routinely approve the posting of notice on employee bulletin boards and in common employee spaces." *Mendoza*, No. 12-CV-8629 (KPF), 2013 WL 5211839, at *9 (S.D.N.Y. Sept. 16, 2013) (citing *Whitehorn,* 767 F. Supp. 2d at 449; *Malloy v. Richard Fleischman & Assocs. Inc.,* No. 09-CV-322 (CM), 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009)). Courts have approved such postings even where the notice will be mailed to prospective plaintiffs, finding defendants' objections of repetitiveness, disruption, and burden unpersuasive and noting that to do so "maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." *Bittencourt*, 310 F.R.D. at 118 (internal quotation marks and citations omitted) (collecting cases); *cf. Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) ("We recognize that a posting of notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace environment.").

Here, the Court cannot discern (and defendants do not articulate) any particular burden that would arise from posting the notice in defendants' place of business. Defendants simply argue that it would be unnecessary. Def.'s Mem. at 16. The Court therefore directs defendants to post the notice and opt-in form in a common, non-public employee space at Serenity Spa NY.

### C. Disclosure of Contact and Personal Information of Potential Collective Action Members

Benavides requests that the Court order defendants to produce, within ten days of its Order, a list of all non-exempt employees who were employed by defendants at any point in the six years prior to the entry of the Order. Pl.'s Mem. at 13. Benavides asks that this list be produced in Excel format with the following information: names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers, and dates of employment. *Id.* Defendants oppose the production of their current and former employees' telephone numbers and e-mail addresses, stating that the production would be premature. Defs.' Mem. at 17. Because it is not clear what if any forms will be returned as undeliverable, defendants assert that Benavides has not established a particular need for this private information and therefore it should not be produced. *Id.*

In the event that the mailings to potential plaintiffs are returned as undeliverable and their names and contact information are insufficient to effectuate notice, Benavides requests that defendants produce the Social Security numbers of these potential plaintiffs, with Benavides stipulating to their confidentiality, so that her counsel can use them to obtain a valid address. Pl.'s Mem. at 13. Benavides'

counsel asserts that this measure is necessary because a large percentage of consent

forms typically are returned as undeliverable because of address changes. *Id.*

While the proposed timing for this production is not entirely clear, it appears that

Benavides requests that defendants produce the Social Security numbers now so

that she can use them at a later date if necessary. Defendants do not expressly

oppose the production of Social Security numbers at this juncture. *Id.*

"Courts in this District commonly grant requests for the production of names,

mailing addresses, email addresses, telephone numbers, and dates of employment

in connection with the conditional certification of a FLSA collective action." *Martin*,

2016 WL 30334, at *19-20 (collecting cases); *see also Tate v. WJL Equities Corp.*, No.

13-CV-8616 (JLC), 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014) ("Courts in this

Circuit have held that disclosure of employee contact information is relevant and

appropriate in connection with conditional collective action certification."). Here,

although defendants argue that production of this information is premature, they

have not indicated that production of the requested information would be either

"unduly burdensome [or] disruptive" and the Court sees no reason why this would

be the case. *Jacob v. Duane Reade, Inc.*, No. 11-CV-0160 (JPO), 2012 WL 260230, at

*10 (S.D.N.Y. Jan. 27, 2012) (ordering defendants to provide contact information

because such information "would be neither unduly burdensome nor disruptive")

(citing *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-04950 (JFB) (ARL), 2009 WL

1706535, at *13 (E.D.N.Y. June 16, 2009)). Moreover, the Court notes that such

production would aid in "facilitat[ing] the speedy collection of data . . . [and] the opt-in process." *Whitehorn*, 2010 WL 2362981, at *3.

The Court, therefore, grants Benavides' request for all known email addresses and telephone numbers of all potential plaintiffs within the conditionally certified class, as well as their names, titles, compensation rates, last known mailing addresses, and dates of employment.  However, because the Court has only approved notice of the conditional collective action as to employees who worked at Serenity Spa NY within three years of the date of Benavides' complaint, Benavides' request for contact information will be granted only for employees who worked for defendants within this time period.  If Benavides revises her notice as directed in order to obtain a six-year notice period, the Court will then direct defendants to produce information extending through that time period.

Additionally, "[a]lthough defendants do not specifically oppose the request to produce [S]ocial [S]ecurity numbers, [the Court] nevertheless conclude[s] that it is unnecessary to require that disclosure at this time." *Ji Li v. Ichiro Rest. Inc.*, No. 14-CV-10242 (AJN), 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015).  "While, in light of privacy concerns, courts in this District typically decline to compel production of [S]ocial [S]ecurity numbers . . . such discovery is often permitted where demonstrably necessary to effectuate notice." *Martin*, 2016 WL 30334, at *20 (citing *In re Penthouse Executive Club Comp. Litig.*, No. 10-CV-1145 (NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010); *Damassia v. Duane Reade, Inc.*, No. 04-

CV-8819(GEL), 2006 WL 2853971, at *8 (S.D.N.Y. Oct. 5, 2006); *Whitehorn*, 767 F. Supp. at 448).

The Court declines to approve production of the Social Security numbers for the potential collective action members before Benavides has demonstrated, with specificity, the necessity of such sensitive information. *See, e.g., Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) (denying "production of Social Security numbers . . . for the purpose of using a 'skip trace' service to contact employees whose mailings are returned as undeliverable," finding that "it is premature to require such information for the entire group when it is necessary only for what may be a small subset who cannot be reached" and providing that "this issue should revisited" when there is more information about "the efficacy of whatever measures are chosen to reach the similarly situated employees"); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009) ("The Court does not see the need to direct the disclosure of [S]ocial [S]ecurity numbers at this stage. If Plaintiffs find that a large number of notices are returned as undeliverable, the Court can consider the matter at that time."); *Chowdhury v. Duane Reade, Inc.*, No. 06-CV-2295 (GEL), 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007) (denying production of Social Security numbers where plaintiff had "not demonstrated that such information will aid in further reducing the already low number of notices that were returned undeliverable"). Benavides' request for production of Social Security numbers is thus denied without prejudice to renewal only upon a showing that this information will facilitate the opt-in process.

## III.   RELATED DISCOVERY DISPUTES

In addition to the pending motion for conditional collective action certification, the parties have raised a discovery dispute regarding whether the production of contact information and documents relating to the compensation of all non-exempt employees of Serenity Spa NY within the last six years is appropriate prior to the Court's approval of conditional collective action certification. *See* Plaintiff's Letter-Motion to Compel Discovery, dated June 29, 2016 at 1 ("Pl.'s Letter-Motion for Discovery") (Dkt. No. 48); Defendants' Response to Plaintiff's Motion to Compel Discovery, dated July 8, 2016, 1-2 ("Defs.' Response to Discovery Motion") (Dkt. No. 51).

Specifically, Benavides has requested and defendants object to 1) the production of contact information for all non-exempt employees of Serenity Spa NY within the last six years; 2) Benavides' use of class payroll data, which already was produced to Benavides in furtherance of a mediation that was scheduled but ultimately did not take place, to support her anticipated summary judgment motion and Rule 23 class certification motion; 3) production of all wage-and-hour documents and tip records for all non-exempt employees who worked for defendants within the last six years; 4) production of records relating to defendants' commission payments to all non-exempt employees who worked for defendants within the last six years; and 5) production of text messages that Dai exchanged with all non-exempt employees in the six years prior to the complaint. Pl.'s Letter-Motion for Discovery at 1-3; Defs.' Response to Discovery Motion at 1-3.

Because the Court hereby grants Benavides' motion for conditional collective action certification on behalf of all non-exempt employees of defendants who worked at Serenity Spa NY within three years of the complaint, Benavides is entitled to production of contact information, documents relating to compensation, and text messages between Dai and these employees to the extent that they are available. The Court also grants Benavides' request to use class payroll data, which was produced to Benavides in furtherance of a class mediation, to support her anticipated summary judgment motion and Rule 23 class certification motion. As discussed in the Court's May 19 ruling on a prior dispute over whether Benavides may use this data to support her motion for conditional collective action certification, "[p]laintiff would . . . plainly be entitled to receive this information in discovery in this case" and thus opposition of Benavides' use of this data "elevates form over substance" and impedes the "just, speedy, and inexpensive determination" of this proceeding. (Dkt. No. 39).

The remaining discovery issue that this Court now must determine is whether Benavides is entitled to production of contact information for, and documents relating to the compensation of, non-exempt employees who worked at Serenity Spa in the entire six-year period that Benavides seeks, as opposed to the three-year period for which the Court has approved conditional collective action certification. The Court thus considers whether Benavides may obtain discovery relating to potential class members to her NYLL claim before certification of this class under Rule 23.

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A matter is relevant if it encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Pre-certification discovery is often necessary in order to provide the court with sufficient information to determine whether certification is appropriate" in light of the requirements set out in Rule 23. *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198 (LAK) (JCF), 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007); *see also Sirota v. Solitron Devices, Inc .*, 673 F.2d 566, 571 (2d Cir. 1982) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery and to conduct hearings to determine whether the prerequisites of Rule 23 are satisfied."); *Calabrese v. CSC Holdings, Inc.,* No. 02-CV-5171, 2007 WL 749690, at *5 (E.D.N.Y. March 7, 2007) (noting that before deciding whether to certify class, "district court is required to be sure that enough pre-certification discovery is provided so that it is satisfied that each Rule 23 requirement has been met") (citing *In re Initial Public Offering Securities Litigation,* 472 F.3d 24, 41 (2d Cir. 2006)).

Discovery permitted for this purpose "must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet [the Rule 23(a)] requirements," while ensuring that defendants are "protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas." *Rahman*, 2007 WL 1521117, at *3 (internal quotation marks and citations omitted);

31

*Youngblood v. Family Dollar Stores, Inc.,* No. 09-CV-3176 (RMB) (FM), 2011 WL 1742109, at *1 (S.D.N.Y. Jan. 5, 2011) ("A district court therefore must limit discovery if it determines, among other things, that 'the discovery sought is . . . obtainable from some other source that is more convenient, less burdensome, or less expensive . . . or . . . the burden or expense of the proposed discovery outweighs its likely benefit.'") (quoting Fed. R. Civ. P. 26(b)(2)(C)).  Such discovery, however, must generally stop short of the merits of the class claims.  *See Calabrese,* 2007 WL 749690, at *5 (noting that discovery should be limited so that Rule 23 hearing does not "'extend into a protracted mini-trial of substantial portions of the underlying litigation'") (quoting *In re Initial Public Offering,* 471 F.3d at 41).

Within this framework, a number of courts have specifically addressed whether the production of names and contact information of putative class members is appropriate prior to class certification.  Generally, contact information of the broader potential class of defendants' employees may be discoverable where it is relevant to demonstrating satisfaction of Rule 23 requirements.  *See, e.g., Gordon v. Kaleida Health*, No. 08-CV-378S, 2012 WL 432885, at *2-3 (W.D.N.Y. Feb. 9, 2012) ("It is well-established that in wage and hour cases, pre-class certification discovery of putative class member contact information is permissible to assist in demonstrating that representative plaintiffs can satisfy Rule 23 criteria."); *Youngblood*, 2011 WL 1742109, at *2 ("There is no question that the names and addresses of putative class members are relevant to Plaintiffs' motion for class certification."); *see also Oppenheimer Fund, Inc.*, 437 U.S. at 354 ("We do not hold

32

that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information could be relevant to issues that arise under Rule 23 . . . or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues.").

However, some courts have "refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI) (MDG), 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (collecting cases). Others have denied such a request without prejudice, finding it potentially "cumulative" and thus premature, where a plaintiff has not demonstrated that "[p]laintiffs' ability to demonstrate commonality, predominance and typicality will . . . necessarily require obtaining discrete employment information from any individual class members." *Gordon v. Kaleida Health*, No. 08-CV-378S (LGF), 2012 WL 432885, at *4 (W.D.N.Y. Feb. 9, 2012) (finding plaintiffs had not established the threshold question of "whether such contact information is needed by Plaintiffs at this time or whether Plaintiffs may be able to meet their burden to establish Rule 23 requirements by thorough use of standard discovery devices"); *Jenkins v. TJX Companies, Inc.*, No. 10-CV-3753 (ADS) (WDW), 2011 WL 1563677, at *3 (E.D.N.Y. Apr. 25, 2011) (finding "plaintiff's request for contact information of putative Rule 23 class members [to be] premature" where plaintiff "failed to articulate a sufficient

basis upon which this discovery is necessary at this time," given that it was possible that "plaintiff could collect sufficient evidence through properly drafted discovery requests," but noting that "[p]laintiff may renew his motion at a later stage of these proceedings, if necessary") (internal citations and quotation marks omitted).

Here, Benavides contends that the discovery she seeks is likely to support her claims that the putative class meets Rule 23's requirements. Plaintiff's Reply in Support of Letter-Motion for Discovery, dated July 11, 2016 ("Pl.'s Reply in Support of Discovery") (Dkt. No. 52). Benavides makes only a cursory argument to this effect, mainly focusing on the ways in which the evidence she has already procured supports her class allegations. *Id.* Nevertheless, the Court is persuaded that production of wage-and-hour documents, tip records, records relating to defendants' commission payments, and text messages with their employer would likely support findings of commonality, typicality, numerosity, that the class is identifiable and ascertainable, and that common questions predominate over any individual issues as required by Rule 23. *Id.* Defendants, meanwhile, have made no showing that production would be unduly burdensome and instead argue only that such discovery is inappropriate at this time and that Benavides will not succeed in achieving class certification. However, the "defendants may not refuse to produce discovery relevant to class certification on that basis" alone. *Rahman*, 2007 WL 1521117, at *3. The Court accordingly directs production of wage-and-hour documents, tip records, records relating to defendants' commission payments, and defendant Dai's

text messages as they relate to all non-exempt employees in the six years prior to the complaint.

Nevertheless, the Court finds that Benavides is not entitled to production of contact information for the putative class members at this time because she has made no showing that communication with individual members of the putative class is necessary to support her assertions under Rule 23. The Court therefore denies this request without prejudice to renewal following Benavides' use of the typical range of discovery devices and a demonstration that she will not be able to meet her burden under Rule 23 without direct contact with individual potential class members. The Court notes, however, that Benavides will be entitled to this contact information, and the Court will direct its production, if Benavides revises the notice of conditional collective action and consent form to expand the time period consistent with this Memorandum Order.

## IV.   CONCLUSION

For the foregoing reasons, Benavides' motion for conditional collective action certification is granted in part and denied in part. The Court grants conditional collective action certification for all non-exempt employees of defendants who worked at Serenity Spa NY, finding that Benavides has made the factual showing required to infer that these employees were subject to a common policy or plan that violated the law. The Court accordingly directs that notice and consent forms be sent to all non-exempt employees of defendants who worked at Serenity Spa NY within three years of the date of the complaint. The Court denies Benavides'

request for a six-year notice period without prejudice to renewal upon submission of a revised notice that is consistent with this Memorandum Order.

The Court further directs that the notice should instruct potential plaintiffs to mail consent forms to plaintiff's counsel and include contact information for both plaintiff's and defendants' counsel as described in this Memorandum Order.  The Court also directs defendants to post the notice and consent forms in a common, non-public employee space at Serenity Spa NY.

To facilitate notice to potential plaintiffs of this action and of their opportunity to opt-in as represented plaintiffs, the Court orders defendants to disclose to plaintiff's counsel the names, titles, compensation rates, last-known mailing addresses, email addresses, telephone numbers, and dates of employment of all potential plaintiffs within the conditionally certified collective action.  The Court declines to require production at this time of the Social Security numbers of potential collective action members.

The Court directs Benavides to revise the notice and consent form, consistent with this Memorandum Order, to confer with defendants in order to agree on a final version of each form, and to submit final versions (as well any translations) for the Court's approval no later than **August 15, 2016**.

Finally, the Court directs the following production as it relates to all non-exempt employees who worked at Serenity Spa NY in the six years prior to the complaint: payroll documents previously produced for mediation, wage-and-hour documents, tip records, records relating to the defendants' commission payments,

and defendant Dai's text messages. The Court denies Benavides's request for production of contact information of non-exempt employees who worked at Serenity Spa NY more than three years prior to the date of the complaint, but notes that Benavides will be entitled to this information if she revises the collective action notice and attendant consent form consistent with this Memorandum Order.

The Clerk of the Court is directed to close docket entry numbers 32, 41, and 48.

**SO ORDERED.**

Dated: New York, New York
August 3, 2016

JAMES L. COTT
United States Magistrate Judge