USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/1/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                           :
GLORIA BENAVIDES, and FANNY                                :
YIN-FANG LIN *on behalf of themselves,*                    :
*FLSA Collective Plaintiffs and the Class,*                :    **MEMORANDUM**
                                                           :    **OPINION AND ORDER**
                    Plaintiffs,                            :
                                                           :    15-CV-9189 (JLC)
                    - against -                            :
                                                           :
SERENITY SPA NY INC., *et ano.,*                           :
                                                           :
                    Defendants.                            :
-----------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiffs Gloria Benavides and Fanny Yin-Fang Lin bring this putative class

action against defendants Serenity Spa NY Inc. and Yu Qun Dai (together,

"Defendants") alleging violations of the Fair Labor Standards Act ("FLSA") and

New York Labor Law ("NYLL"). Plaintiffs move for class certification as to their

NYLL claims and for summary judgment as to their FLSA and NYLL claims.

Defendants oppose both motions. For the reasons set forth below, Plaintiffs' motion

for class certification is granted, but their motion for summary judgment is denied

without prejudice.

## I.     BACKGROUND

### A.     Procedural History

On November 20, 2015, Benavides commenced this action against

Defendants, on behalf of herself and other similarly situated employees. Complaint,

dated Nov. 20, 2015, Dkt. No. 1. The parties consented to my jurisdiction on
February 18, 2016. Reference Order, dated Feb. 18, 2016, Dkt. No. 17. Benavides
then filed an Amended Complaint on May 11, 2016. First Amended Complaint,
dated May 11, 2016 ("Am. Compl."), Dkt. No. 35.[1]

In her Amended Complaint, Benavides alleged that Defendants had been
knowingly and willfully operating their business according to policies that violate
the FLSA and NYLL. *Id.* ¶¶ 35–39. Specifically, she contended that Defendants
failed to compensate employees consistent with the minimum wage and overtime
provisions of the FLSA and NYLL. *Id.* ¶¶ 45–46, 55–56. She further alleged that
Defendants violated NYLL's spread-of-hours provisions, failed to provide employees
wage-and-hour notices as required by NYLL § 195(1), and failed to provide proper
wage statements as required by NYLL § 195(3). *Id.* ¶¶ 57–59. Additionally,
Benavides claimed that she had been subject to a racially hostile work environment
in violation of New York State and City Human Rights Laws, as Hispanic
employees were spoken to "harshly" and expected to "do the dirty or rough work"
that Chinese employees were not required to do. *Id.* ¶¶ 28, 62, 67.[2] Defendants
answered the Amended Complaint on May 25, 2016. Answer, dated May 25, 2016,
Dkt. No. 40.

---

[1] The period of time between the filing of the original and amended complaints was
due, in part, to a brief stay permitting the parties to engage in mediation. Order,
dated Feb. 19, 2016, Dkt. No. 19. The stay was lifted when the mediation was
cancelled. Order, dated Apr. 12, 2016, Dkt. No. 24.

[2] Benavides did not move for class certification or summary judgment as to her
hostile work environment claim.

Benavides subsequently moved for conditional collective certification on May 31, 2016, Motion to Certify Class, dated May 31, 2016, Dkt. No. 41, which Defendants opposed. Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Class Certification, dated June 14, 2016, Dkt. No. 45. The Court granted the motion in part and denied it in part. *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 477 (S.D.N.Y. 2016). Specifically, the Court conditionally certified the collective action, and authorized notice and consent forms to be issued to all non-exempt employees who worked at Serenity Spa NY within three years of the date of the complaint. *Id.* at 483, 485. The Court also permitted Benavides to revise the proposed notice so that it could be sent to all non-exempt employees who worked at Serenity Spa NY within six years of the date of the complaint. *Id.* at 485–86. Although the Court did not approve her first revised notice and consent form, Order, dated Aug. 16, 2016, Dkt. No. 62, on August 19, 2016, the Court approved Benavides' second revised notice and consent form. Order, dated Aug. 19, 2016, Dkt. No. 65.

On August 31, 2016, Benavides moved for class certification under Rule 23 for the NYLL claims. Motion for Class Certification, dated Aug. 31, 2016, Dkt. No. 71. On the same day, she moved for summary judgment as to the FLSA and NYLL claims. Motion for Summary Judgment, dated Aug. 31, 2016, Dkt. No. 75. Prior to Defendants filing a response to these motions, Benavides also moved to compel Defendants to produce the social security numbers of potential opt-in plaintiffs, because Defendants had failed to produce mailing addresses for 36 of the 52

3

potential plaintiffs. Letter Motion, dated Sept. 26, 2016 ("Pl. Mot."), Dkt. No. 79.
Defendants consented to the production the social security numbers, Letter Motion,
dated Sept. 27, 2016, Dkt. No. 80, and the Court directed Defendants to produce the
information no later than October 5, 2016. Order, dated Sept. 28, 2016 ("Sept.
Order"), Dkt. No. 81.

On October 7, 2016, Defendants filed their opposition to Benavides' motions.
Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class
Certification and Summary Judgment, dated Oct. 7, 2016 ("Opp. Mem."), Dkt. No.
87. Defendants argue that Benavides cannot meet all the requirements under Rule
23 to certify a class action, and that there are genuine disputes of material fact
precluding summary judgment. *Id.* at 2. As part of their opposition papers,
Defendants attached, *inter alia*, five declarations from current Serenity Spa NY
employees. Opp. Mem. Exs. I–M (together "Empl. Decs.").

Benavides replied to Defendants' opposition on October 31, 2016, and, in
addition to addressing Defendants' arguments opposing the motion, objected to the
use of declarations from current Serenity Spa NY employees. Reply Memorandum
of Law in Support of Plaintiff's Motion for Class Certification and Summary
Judgment, dated Oct. 31, 2016 ("Reply"), Dkt. No. 92, at 1–4. Additionally, on
November 2, 2016, Benavides wrote to the Court to request that the employee
declarations be stricken from the record, or disregarded until the employees had
been deposed. Letter, dated Nov. 2, 2016 ("Pl. Nov. Letter"), Dkt. No. 93. In their
own letter to the Court, Defendants objected to the request and provided additional

4

arguments as to why the declarations should be accepted. Letter, dated Nov. 8, 2016 ("Def. Nov. Letter"), Dkt. No. 94.

Finally, on November 28, 2016, Benavides filed Fanny Yin-Fang Lin's consent to become a party plaintiff, Consent, dated Nov. 8, 2016 ("Consent"), Dkt. No. 95, accompanied by a declaration from Lin in support of the motion for class certification and summary judgment. Declaration of Fanny Yin-Fang Lin, dated Nov. 23, 2016 ("Lin Decl."), Dkt. No. 96. On December 5, 2016, Defendants wrote to request that the Court disregard Lin's declaration, as it had been filed after the briefing schedule for the motions had expired. Letter, dated Dec. 5, 2016, Dkt. No. 97.[3]

## B.   Factual Background

### 1.   Statement of Facts

Serenity Spa NY is a spa located at 1397 Third Avenue in Manhattan, and is operated by individual defendant Yu Qun Dai through corporate defendant Serenity Spa NY, Inc. Am. Compl. ¶ 7. Serenity Spa NY, Inc. is incorporated under the laws of New York, and Dai has been its sole shareholder and senior executive at all relevant times. *Id.* ¶¶ 7–8; Defendants' Rule 56.1 Counter-statement, dated Oct. 7, 2016 ("Def. R. 56.1"), Dkt. No. 89, ¶ 2. In that role, she was at the spa every day. Am. Compl. ¶ 8; Def. R. 56.1 ¶ 10.

---

[3] Given that Lin has now joined with Benavides, the Court will refer to them as "Plaintiffs" throughout the rest of this Memorandum Opinion and Order (except where Benavides' claims are unique to her).

It is undisputed that Dai exercised control over the employment terms and conditions of Serenity Spa NY employees. More specifically, Dai had the power to hire and fire Serenity Spa NY employees, and to set their work schedules. *Id.* She maintained employment records and set the payroll policies (though Defendants note that she relied on her accounting company's professional advice). Def. R. 56.1 ¶¶ 7–8. Additionally, although Plaintiffs contend that Dai also had the authority to determine the employees' compensation, Defendants clarify that she was able to determine their hourly rate of pay and the percentage of the commission that they would receive for each beauty service, but not the total amount of commission. *Id.* ¶ 6.

Benavides was employed at Serenity Spa NY during two distinct periods of employment, though the precise dates are unclear. Am. Compl. ¶ 23. The first period began at some point between November and January 2012, and ended in January 2013. Def. R. 56.1 ¶ 12. The second period began in either August or September 2014, and ended in or about August 2015. *Id.* ¶ 13. The parties agree that while Benavides was employed at Serenity Spa NY she worked as a nail technician (a.k.a. manicurist), Am. Compl. ¶ 23, but disagree as to whether she was employed as a massage therapist and waxer as well, as Defendants maintain that she could "also perform other type[s] of beauty services such as massage and waxing," but was only *employed* as a nail technician. Def. R. 56.1 ¶ 11.

There is no dispute that Benavides' work schedule lasted approximately 10 hours each day. Def. R. 56.1 ¶¶ 14, 16. However, Defendants contend that

6

Benevides was regularly given a meal break about 40 to 45 minutes each day and was also free to take as many snack breaks as she wanted and for as long as she wanted. *Id.* Thus, Defendants contend that because she was given as many snack breaks as she wanted, as well as a meal break, Benevides' total break time amounted to about two hours each day, resulting in an eight-hour work day and no overtime. *Id.* ¶¶ 14–16.

Benevides was paid in cash with no wage statements. Am. Compl. ¶ 26. At least five Serenity Spa NY employees were paid "off the books" (meaning "in cash without any wage statements"), and though some were paid "on the books," Defendants implemented the same policies for "on the books" and "off the books" employees, including paying all non-exempt employees on an hourly basis. Def. R. 56.1 ¶¶ 20–22. What that hourly rate of pay was, however, is in dispute. Benevides states that all hourly employees were paid $5.45 to $5.65 per hour for 2009 to 2013; $5.65 in 2014; and $5.65 to $7.50 in 2015. *Id.* ¶¶ 23–25. Defendants dispute these numbers, and point to a selection of payroll reports showing that employees were paid at rates ranging from $5.65 per hour to $12.50 per hour at various times between 2014 and 2015. *Id.* (citing Opp. Mem. Exs. D–F).

There is also disagreement about Benevides' rate of pay during her 2012–13 term of employment. Benevides contends that she was paid at a rate of $7.00 per hour, while Defendants argue that she was paid $7.50 per hour. *Id.* ¶ 17. The parties agree that she was paid $7.50 per hour when she worked at the spa from 2014 to 2015. *Id.* ¶ 18.

7

Defendants maintain that it was customary at the outset of employment to provide oral notice to their employees that Defendants would be taking a tip credit and that the employees could therefore keep all of their tips. *Id.* ¶¶ 28, 34. However, Benavides alleges that she and other employees never received notice that Defendants would take a tip credit, that the employees were entitled to retain all their tips, or that the tip credit taken by Defendants could not exceed the value of the tips the employees actually received. Am. Compl. ¶ 30. Nonetheless, the parties agree that, prior to August 2015, Defendants did not provide any written wage-and-hour notices to their employees, including Benavides. Def. R. 56.1 ¶¶ 29–31. The written wage-and-hour notices that Defendants have provided for employees since August 2015 state that "Yun Qun Dai" and "Serenity Spa NY" are the employers, and do not specify the exact amount of tip credit allowance claimed as part of the employees' hourly pay rate. *Id.* ¶¶ 32–33. The notices either leave the amount of the tip credit blank, state "N/A," state an incorrect amount, or provide a range of numbers that are incorrect. *Id.* ¶ 33.

For those employees who did receive wage statements, they were issued under the name "Serenity Spa NY, Inc.," though the statements did not state the phone number for Defendants, or the amount of tip credit allowance that was claimed for the relevant time period. *Id.* ¶¶ 35, 37–38. The parties disagree as to whether the wage statements accurately reflect the actual hours worked by employees, as Plaintiffs contend that the numbers are rounded to the nearest whole number, while Defendants argue that the numbers are accurate, and if there is

deviation due to rounding, it is in the employees' favor by rounding the hours up. *Id.* ¶ 36.

Plaintiffs argue that Defendants did not keep any record of the amount of tip credit allowance they claimed for each employee in any given pay period. *Id.* ¶ 40. However, Defendants counter that the amount of tip credit they took can be deduced by calculating the difference between the prevailing minimum wage and the lower rate that employees were paid. *Id.*[4] Plaintiffs allege that all non-exempt employees were paid the regular hourly rate for hours worked more than 40 hours in the week, instead of receiving time and one-half for overtime pay. *Id.* ¶ 41. Defendants do not directly dispute this assertion, but argue that "almost all" employees did not work overtime, so the time and one-half rate of pay did not apply. *Id.*

---

[4] Defendants' contention about how to determine what tip credit was taken is difficult to understand; their exact statement is as follows:

> Basing on the pay roll records produced to the Plaintiff, if the tipped none-exempted [sic] employees received at an hourly rate lower than the applicable prevailing minimum wage, it was due to the taking of the tip credit allowances, properly or not, and as such the payroll records would reflect the tip credit allowance that was taken, if any, for each employee for each pay period [sic].

*Id.* ¶ 40. Specifically, it is unclear whether Defendants are arguing that the fact that the wage is lower than the prevailing minimum wage generally indicates a tip credit was taken, or that it is actually possible to calculate the exact amount of tip credit taken.

9

Finally, Defendants acknowledge that they did not consult an attorney regarding compliance with wage-and-hour regulations until August 2015, *id.* ¶ 42, and did not use a punch clock system to record the employees' hours. *Id.* ¶ 43.

## 2. Declarations Submitted by Defendants

In their response to Plaintiffs' motions, Defendants included declarations from five current Serenity Spa NY employees: Adriana Polo, Rosa Naula, Li Wei Li, Qi Hong Xia, and Yin Ming Mei. With slight variations in substance and wording, the declarations all state that the employees did not work overtime, were free to take breaks and did so throughout the day, and to the extent they overlapped with Benavides, they did not see her taking overtime. *Id.* Each employee states that there was a poster in Serenity Spa NY that informed them of the basics of minimum wage law and overtime, and, with minimal variation, that Dai "told me that I can keep all my tips and explained to me some details about why my hourly compensation will be lower than the normal minimum wage." *See, e.g.*, Opp. Mem. Ex. I, ¶¶ 12–13. Further, they maintain that they in fact kept their tips, in addition to receiving daily commission. *Id.* ¶ 11.

## II. DISCUSSION

## A. The Court Declines to Consider the Declarations from the Five Current Employees

Plaintiffs object to Defendants' reliance on the five employee declarations, and argue that they should be stricken from the record, or at least disregarded until Plaintiffs can depose the declarants. Reply at 1. Plaintiffs contend that the statements are of "'limited evidentiary value'" because it is not evident that the

10

employees knew that their testimony could adversely affect their recovery or that they had a right to seek independent counsel, as Defendants' counsel did not represent them. *Id.* (quoting *Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-4326 (RJS), 2013 WL 494020, at *8 (S.D.N.Y. Feb. 7, 2013)). Plaintiffs also point to the lack of Spanish translations for allegedly Spanish-speaking employees. *Id.* at 3.

Defendants respond that, although such declarations may be rejected in the context of a motion for conditional certification of a collective action, that is so because a plaintiff is only required to meet a "very modest showing," which does not apply in the context of class certification or summary judgment, where there are no requirements that a plaintiff have the opportunity to depose the declarants. Def. Nov. Letter at 2–3.[5] Additionally, Defendants maintain that the employees would have been informed of their rights through the court-approved notice that was sent out after Plaintiffs' collective action motion was granted. *Id.* at 2.

The Court declines to consider these declarations for three reasons: (1) Defendants have not demonstrated that the employees were on notice of their rights; (2) the weight of authority is against the use of the declarations; and (3) their content is of negligible evidentiary value. First, on September 26, 2016, Plaintiffs moved to compel Defendants to produce the social security numbers for some of the potential opt-in plaintiffs because Defendants had not provided their addresses, and wrote that, "[a]s a result, we have not been able to mail the court-

---

[5] Citations to page numbers of filings without internal pagination refer to the pagination generated by this Court's Electronic Case Files ("ECF") system.

11

approved notice of this action to potential plaintiffs." Pl. Mot. at 1. The Court ordered Defendants to produce the information to Plaintiffs by October 5, 2016. Sept. Order. Thus, from the plain language of Plaintiffs' letter-motion, none of the notices had been sent out at the end of September, making it extremely unlikely that the employee declarants had received any notice of their rights in advance of making the declarations on October 7, 2016. *See* Empl. Decs. (all dated October 7, 2016). Defendants' speculation about when Plaintiffs' counsel would have sent out the notices is thus unavailing in light of the time frame in which the notices were mailed. Additionally, the simplest way for Defendants to have demonstrated that the employee declarants were aware of their rights would have been for the employees to attest as much in their declarations—or even to state that they had received the court-approved notice. But the employees did not do so, and Defendants cannot now benefit from an assumption that the employees were aware of their rights, and understood how their statements could adversely impact them.

Second, by analogy, declarations submitted by employers of current employees are regularly disregarded in the context of conditional certification of a collective action, both because of the chance for coercion by the employer, but also because the evidentiary burden is relatively low. *See Amador*, 2013 WL 494020, at *8 ("statements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion"); *Ravenell v. Avis Budget Car Rental, LLC*, No. 08-CV-2113 (SLT) (ALC), 2010 WL 2921508, at *5 (E.D.N.Y. July 19, 2010) ("the employee declarations submitted by

12

[defendant] 'should be discounted at this stage' because Plaintiffs have not yet been able to depose the employees who signed them") (quoting *Francis v. A & E Stores, Inc.*, No. 06-CV-1638, 2008 WL 4619858, at \*3 (S.D.N.Y. Oct. 16, 2008)); *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819 (GEL), 2006 WL 2853971, at \*7 (S.D.N.Y. Oct. 5, 2006) ("Given that the Court must be 'lenient' in deciding whether plaintiff has met its 'minimal' burden at this stage [of conditional certification of a collective action], untested evidence such as the affidavits submitted by defendant cannot . . . defeat plaintiffs' entitlement to a preliminary determination that they are similarly situated to other [employees].").

Such declarations have been disregarded in the context of class certifications as well. In *Gortat v. Capala Brothers*, for example, defendants submitted affidavits from employees that allegedly constituted releases by the employees of their NYLL claims, or at least, were evidence that they should be excluded from the class certification numerosity requirement. No. 07-CV-3629 (ILG) (SMG), 2009 WL 3347091, at \*3–4 (E.D.N.Y. Oct. 16, 2009), *adopted by,* 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010), *aff'd,* 568 F. App'x 78 (2d Cir. 2014). The *Gortat* court rejected those arguments for several reasons that are applicable here as well. First, the court found that the affidavits were not valid releases because, *inter alia*:

> these purported releases from putative plaintiffs—many of whom are recent immigrants dependent on defendants for employment—were obtained without the benefit of independent advice from counsel or even notice of the plaintiffs' claims in a form approved by the court. As such, the proposition that they were knowingly and voluntarily made is suspect.

13

*Id.* at 4. Further, it was not clear what kind of notice the putative class members had received, and "[n]umerous courts have found that contacts with putative class members warranted judicial intervention." *Id.* at 4–5 (collecting cases). The court also noted a policy concern in permitting such affidavits to be considered, because it would "provide an incentive for defendants in this case, and in other cases, to engage in improper and potentially coercive communications with members of a putative class." *Id.* at 5. As in *Gortat*, Defendants' contact with the five employees who submitted declarations was not approved by the Court, and there is no reliable indication of what notice the employees received regarding their rights.

Third, the declarations primarily attest to the ways in which Defendants were in compliance with the FLSA and NYLL, which is not the primary concern of a motion for class certification. At the class certification stage, the Court evaluates whether "plaintiffs' claims 'depend upon a common contention of such a nature that it is capable of classwide resolution' [and] whether a classwide proceeding is capable of 'generating common answers apt to drive the resolution of the litigation.'" *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

Accordingly, the Court will not consider the declarations of the current employees submitted by Defendants. "Defendants may wish to submit these [or

14

similar] declarations at a later stage in the litigation" to refute Plaintiffs' claims; "[a]t the class certification stage, however, the declarations fall short." *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312 (RA) (SN), 2016 WL 4379421, at *10 (S.D.N.Y. June 13, 2016), *adopted by,* 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016). Finally, if Defendants choose to resubmit these declarations (or a modified version of them), "they should submit either a declaration confirming the[ir] accuracy . . ., or alternatively, certified translations." *Feng v. Hampshire Times*, No. 14-CV-7102 (SHS) (JLC), 2015 WL 1061973, at *3 n.4 (S.D.N.Y. Mar. 11, 2015).

## B. The Court Grants the Motion for Class Certification

### 1. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01, (1979)). Federal Rule of Civil Procedure 23(a) provides that one or more members of a class can sue on behalf of all members if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff[s'] claims," and "ensure[ ] that the named

plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 564 U.S. at 349 (internal quotation marks omitted).

"The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S. Ct. at 1432. At issue in this case is Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "This [inquiry] calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005)).

Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." *Dukes*, 564 U.S. at 350. "[T]he district court must conduct a 'rigorous analysis' in determining whether [Rule 23(a)'s and] Rule 23(b)'s requirements have been met." *Jacob*, 602 F. App'x at 6–7 (quoting *Comcast*, 133 S. Ct. at 1432). "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's

16

underlying claim' . . . because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast*, 133 S. Ct. at 1432 (quoting *Dukes*, 564 U.S. at 351). Therefore, "the 'district judge is to assess all of the relevant evidence admitted at the class certification stage' and resolve material factual disputes." *Jacob*, 602 F. App'x at 7 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006)).

Finally, "[w]here, as here, a collective action under the FLSA involves claims under the NYLL, 'courts in the Second Circuit routinely certify class actions so that New York State and federal wage and hour claims are considered together.'" *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (quoting *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008)); *see, e.g., Reyes v. City of Rye*, No. 13-CV-9051 (NSR), 2016 WL 4064042, at *8 (S.D.N.Y. July 28, 2016) ("FLSA and NYLL class claims should be tried together because it allows for a more cost-efficient and fair litigation of common disputes.") (internal quotation marks omitted); *Pichardo*, 2016 WL 4379421, at *4 ("'Where a FLSA collective action based upon the same set of facts has been certified, courts are inclined to grant class certification of related state law claims.'") (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 160 (S.D.N.Y. 2014)).

## 2. Analysis

### a. Ascertainability

The Second Circuit has "recognized an 'implied requirement of
ascertainability' in Rule 23 of the Federal Rules of Civil Procedure." *Brecher v.
Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting i*n re Initial Pub.
Offerings Secs. Litig.*, 471 F.3d at 30). "[T]he touchstone of ascertainability is
whether the class is sufficiently definite so that it is administratively feasible for
the court to determine whether a particular individual is a member." *Id.* (internal
quotation marks omitted). "The ascertainability requirement . . . asks district
courts to consider whether a proposed class is defined using objective criteria that
establish a membership with definite boundaries," and "will only preclude
certification if a proposed class definition is indeterminate in some fundamental
way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017).

Here, Plaintiffs describe the class members as "all former and current non-
exempt employees, including nail technicians (a.k.a. manicurists), massage
therapists, aestheticians (a.k.a. facialists), eyelash stylists[,] and waxers, employed
by Defendants at Serenity Spa NY . . . on or after the date that is six (6) years
before the filing of the initial Complaint." Pl. Mem. at 1, 12–13. Plaintiffs note that
class members can be identified by Defendants' employment records, which
indicates that the class is identifiable and ascertainable. *Id.* at 13. As the contours
of the class are defined and "'the class can clearly be ascertained by objective
documentation,'" the proposed class is ascertainable. *Gucciardo v. Titanium Constr.*

18

*Servs.*, Inc., No. 16-CV-1113 (LGS), 2017 WL 3738777, at \*6 (S.D.N.Y. Aug. 30, 2017) (quoting *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012)); *see also Sanchez v. N.Y. Kimchi Catering, Corp.*, No. 16-CV-7784 (LGS), 2017 WL 2799863, at \*8 (S.D.N.Y. June 28, 2017).

### b. Numerosity

"Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). To that end, "numerosity is presumed where a putative class has forty or more members." *Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). "However, the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir.), *as amended* (Nov. 12, 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

The parties do not dispute that the proposed class includes 52 individuals, based on Defendants' list of all non-exempt employees who worked at Serenity Spa

19

NY in the six years prior to the filing of the Complaint. Pl. Mem. at 14; Opp. Mem. at 2. Instead, Defendants argue that "the number of potential plaintiffs in a class is but one factor, not the exclusive factor, for the court to consider." Opp. Mem. at 6. Defendants cite to *Deen v. New School University*, *id.* at 7, and note that despite a proposed class size of more than 100 members, the court determined that "none of the *Robidoux* factors weigh[ed] in favor of finding joinder impracticable in [the] case." No. 05-CV-7174 (KMW), 2008 WL 331366, at *5 (S.D.N.Y. Feb. 4, 2008). Defendants argue that, as in *Deen*, the numerosity requirement is not met here, because the proposed class members "mostly reside in Queens and Brooklyn," an individual plaintiff "may be entitled to recover more monetary compensation depending on the length of employment," and, because "it is standard practice for plaintiffs counsel in wage and hour actions to be paid on contingent basis," plaintiffs would not incur out-of-pocket expenses—presumably making the financial considerations moot. Opp. Mem. at 7–8.

Plaintiffs counter that members of the proposed class have limited financial resources, are primarily immigrant workers, speak limited English, can expect a "relatively small" recovery, and are still employed by Defendants in some cases. Reply at 6 (citing Opp. Mem. at 17 n.3; Dai Decl. ¶ 40). Additionally, they contend that *Deen* is not analogous, because the plaintiffs in that case were "educated professionals who [had] the monetary incentive to protect their own interests due to the size of their potential damage awards," which was up to $60,000 per plaintiff. *Deen*, 2008 WL 331366, at *4 (internal quotation marks omitted).

20

Plaintiffs have the better of the argument. *Deen* was notably not a NYLL case, and courts have generally found that judicial economy is served by granting class certification in such proceedings when they are brought in tandem with FLSA class claims. *See, e.g., Reyes*, 2016 WL 4064042, at \*8 ("Furthermore, FLSA and NYLL class claims should be tried together 'because it allows for a more cost-efficient and fair litigation of common disputes.'") (quoting *Damassia*, 250 F.R.D. at 164). Defendants, therefore, have not provided sufficient evidence, specific to the facts of this case, to overcome the presumption of numerosity. *See, e.g., Sanchez*, 2017 WL 2799863, at \*6 ("Numerosity is presumed based on 40 putative class members, and Defendants have not rebutted that presumption.") (citation omitted).

### c. Commonality

"Rule 23(a)(2)'s commonality prerequisite requires a showing that the plaintiffs' claims 'depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Jacob*, 602 F. App'x at 6 (quoting *Dukes,* 564 U.S. at 350) (alteration in original). "The Supreme Court in [*Dukes*] ruled that to show commonality, it is not enough for the movant to allege that the proposed class members share common questions, rather he or she must show that the classwide proceeding itself will 'generate common answers apt to drive the resolution of the litigation.'" *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (quoting *Dukes*, 564 U.S. at 350). The "common question" analysis does not require that damages be

identical, "'[b]ecause commonality does not mean that all issues must be identical as to each member, [and thus] the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement.'" *Reyes*, 2016 WL 4064042, at *5 (quoting *Padilla v. Maersk Line, Ltd.*, 271 F.R.D. 444, 448 (S.D.N.Y. 2010)). In the context of NYLL cases, where the employer's policies are applied in the same manner to the class, courts generally find that the element of commonality is met. *See, e.g.*, *Gucciardo*, 2017 WL 3738777, at *3; *Balderramo v. Go N.Y. Tours Inc.*, No. 15-CV-2326 (ER), 2017 WL 2819863, at *3 (S.D.N.Y. June 28, 2017); *Gomez v. Lace Entm't, Inc.*, No. 15-CV-3326 (CM), 2017 WL 129130, at *7 (S.D.N.Y. Jan. 6, 2017) ("'[T]he weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases.' Courts in this district have instead focused on whether the employer had company-wide wage policies that injured the proposed class.") (quoting *Morris v. Affinity Health Plan, Inc.*, No. 09-CV-1932 (ALC), 2012 WL 1608644, at *2 (S.D.N.Y. May 8, 2012)).

Plaintiffs assert that Benavides' declaration, Dai's deposition, and the time and payroll records "reflect alleged companywide violations" and "Defendants' uniform wage and hour policies and practices," which led to Defendants' failure to pay minimum wage, to pay overtime, to provide wage and hour notices, or to provide proper wage statements. Pl. Mem. at 15–16. Specifically, proposed class members were paid based on the same hourly rates and commission structure, Reply at 9 (citing Yun Qun Dai Deposition ("Dai Dep."), Pl. Mem. Ex. A at 27, 53, 56; Defendants' Payroll Records, Pl. Mem. Ex. B), and Defendants "'maintain[ed] no

22

overtime work policy' and 'did not pay [the employees an] overtime premium," *id.* at 11 (quoting Declaration of Yun Qun Dai, Dkt. No. 88, ¶¶ 28–29). Further, there is no contention that the class members received different forms of wage notices of statements. *Id.* at 12.

Defendants respond that "there are no class wide common answers to any of [Plaintiffs'] questions," Opp. Mem. at 8. Defendants' contentions regarding commonality, however, generally amount to arguments about the merits of Plaintiffs' claims—not whether there were common questions related to employer policies. Although commission payments may vary as to employees and impact their total wages, *id.* at 10, and although some employees may not have worked overtime, *id.* at 11, "'the need for an individualized determination of damages suffered by each class member generally does not defeat the [commonality] requirement." *Gucciardo*, 2017 WL 3738777, at \*3 (quoting *Reyes*, 2016 WL 4064042, at \*5); *see also Rivera*, 312 F.R.D. at 271 (collecting cases). Additionally, despite Defendants' assertion that they may have an "affirmative defense for wage notice and wage statement violations with respect to at least some, if not all, putative class members," Opp. Mem. at 12, "their ability to proffer such evidence only reinforces the . . . conclusion that the class's claims may be resolved by generalized proof." *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-3312 (RA), 2016 WL 5338551, at \*4 (S.D.N.Y. Sept. 23, 2016). Accordingly, because the alleged violations derive from the same wage-and-hour policies, Plaintiffs have established the commonality requirement.

#### d. Typicality and Adequacy

Typicality and adequacy both "involve similar inquiries into the unique defenses potentially applicable to [the named plaintiff]." *Samaniego*, 2017 WL 2992500, at *4. "Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Cent. States*, 504 F.3d at 245 (2d Cir. 2007) (quoting *Robinson v. Metro–N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)). A class representative must be typical of the class, "to ensure that a class representative has 'the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 71 (S.D.N.Y. 2009) (quoting *In re NASDAQ Market–Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997)). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37. However, although "'individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which will threaten to become the focus of the litigation.'" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59–60 (2d Cir. 2000) (quoting *Gary*

*Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

"The requirement that the representative parties must be able to fairly and adequately protect the interests of the class 'is designed to ferret out potential conflicts between representatives and other class members.'" *Balderramo*, 2017 WL 2819863, at *4 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001), *superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006)). "To meet the adequacy requirement, 'the class members must not have interests that are antagonistic to one another,' and class counsel must be 'qualified, experienced, and able to conduct the litigation.'" *Murphy v. LaJaunie*, No. 13-CV-6503 (RJS), 2015 WL 4528140, at *5 (S.D.N.Y. Jul. 24, 2015) (quoting *Brown v. Kelly*, 609 F.3d 467, 479 (2d Cir. 2010) and *Baffa*, 222 F.3d at 60). "The issue of whether the proposed class representative is subject to a unique defense is also relevant to whether he or she will be an adequate representative of the class." *Callari v. Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67, 79 (E.D.N.Y. 2015) (collecting cases). "However, 'not every potential disagreement between a representative and the class members will stand in the way of a class suit.' Instead, the conflict must be 'fundamental.'" *Balverde*, 2017 WL 1954934, at *8 (quoting *Baffa*, 222 F.3d at 60).

Plaintiffs satisfy the typicality and adequacy requirements, because the alleged harms suffered by Benavides are typical of those of the proposed class.[6] Through her declaration, Benavides states that she was not paid minimum wage or overtime compensation, and did not receive the required wage notices or statements. Declaration of Gloria Benavides, dated Aug. 25, 2016 ("Benavides Decl."), Dkt. No. 73, ¶¶ 9–12. Benavides also states that she "agree[s] to act as a class representative," *id.* ¶ 13, which further demonstrates that she is prepared to take on the role. *See Gomez*, 2017 WL 129130, at *9 ("Courts in this circuit have found that plaintiffs' affidavits can properly satisfy the adequacy requirement.").

Defendants argue that Benavides does not meet these requirements because she was paid in cash, while others received checks. Opp. Mem. at 14. However, both parties concede that Benavides was not the only employee paid in cash, and she estimates that "at least 10 to 12 other non-managerial employees . . . were similarly paid 'off the books' in cash." Benavides Decl. ¶ 6. More importantly, how Benavides was paid does not negate the contention that she was subject to the same course of conduct and policies as other proposed class members—only that her method of proof may be different. *See* Dai Dep. at 73–74 ("Q. But the off-the-books employees are really just the same as your on-the-books employees, right? A.

---

[6] Because Lin did not consent to become a party plaintiff until after the motion for class certification was fully submitted, only Benavides' qualifications as a class representative are examined at this time. Whether Lin may also serve as a class representative is a question to be decided at a later date.

Yes."). Such "minor variations" do not defeat typicality. *Robidoux*, 987 F.2d at 936–37.

Additionally, Defendants argue that Benavides' separate race discrimination claim against them would divide the Hispanic employees (like herself) and the Chinese employees. Opp. Mem. at 15. They focus on how her discrimination claim is based, in part, on having to work extra hours cleaning, which Chinese employees were not required to do, and "[i]t is therefore prejudicial to all the absent putative Chinese class members and even the other Hispanic members who do not share [Benavides'] view." *Id.* However, as Plaintiffs observe, Benavides' "discrimination claim does not create a 'fundamental conflict of interest[ ]' because the allegations of discrimination[ ] are only against Defendants, not against any other Chinese employees." Reply at 18. Defendants' argument that Benavides' discrimination claim defeats typicality "'is without merit, because it rests on a conflation of [Benavides'] racial discrimination claims (which are not brought in a representative capacity) with [her NYLL] claims (which are).'" *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 1040052, at *19 (S.D.N.Y. Mar. 15, 2013) (quoting *Toure v. Cent. Parking Sys. of N.Y.*, No. 05-CV-5237 (WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007), *adopted by,* 2013 WL 2473039 (S.D.N.Y. June 7, 2013); *see also Duarte v. Tri-State Physical Med. & Rehab., P.C.*, No. 11-CV-3765 (NRB), 2012 WL 2847741, at *9 (S.D.N.Y. July 11, 2012) (finding defendants "failed to demonstrate that plaintiffs will be unable to meet the adequacy requirement" despite contention that class representative's retaliation claims

27

"present a conflict in her ability to vindicate the rights of any alleged class members") (internal quotation marks omitted). Further, to the extent Benavides, as a class representative, worked more hours than other class members, that fact goes to the potential calculation of damages, and does not defeat typicality or adequacy. *Spencer*, 2013 WL 1040052, at \*19 (finding, with respect to the potential calculation of damages, "no merit to [defendant's] argument that typicality is not established because [the named plaintiff] may have worked more overtime hours than the other class members") (citation omitted).

### e. Predominance

In addition to the requirements outlined by Rule 23(a), courts must be satisfied that certification is appropriate pursuant to Rule 23(b), which permits certification if both "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The first requirement of predominance "is satisfied if: (1) resolution of any material 'legal or factual questions can be achieved through generalized proof,' and (2) 'these common issues are more substantial than the issues subject only to individualized proof.'" *Petrobras*, 862 F.3d at 270 (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016), *cert. denied,* 137 S. Ct. 1332 (2017)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a

prima facie showing or the issue is susceptible to generalized, class-wide proof."
*Tyson*, 136 S. Ct. at 1045 (internal quotation marks omitted).

"[I]t [is] 'well-established' in this Circuit that 'the fact that damages may
have to be ascertained on an individual basis is not sufficient to defeat class
certification' under Rule 23(b)(3)." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405
(2d Cir. 2015) (quoting *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir.
2010)). Although "damages questions should be considered at the certification stage
when weighing predominance issues, . . . 'that damages may have to be ascertained
on an individual basis is a factor that we must consider in deciding whether issues
susceptible to generalized proof 'outweigh' individual issues.'" *Id.* at 408 (quoting
*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008)). Further,
"proponents of class certification [need not] rely upon a classwide damages model to
demonstrate predominance." *Id.* at 407.

Plaintiffs have established that the common issues in this case are more
substantial than the individual ones, for reasons similar to those discussed with
respect to commonality. *See supra* at 22–23. They have alleged that Defendants
engaged in common policies that denied workers proper minimum wages, overtime
compensation, proper wage and hour notices, and proper wage statements. Pl.
Mem. at 20; Reply at 20. "Courts routinely find that common questions
predominate under such circumstances." *See Gucciardo*, 2017 WL 3738777, at *6
(collecting cases).

Defendants' arguments on this point, as with their commonality analysis, mistake the question of whether common questions predominate with whether Plaintiffs have provided sufficient answers to those common questions. Opp. Mem. at 17. Defendants argue that liability and damages cannot be determined without "individualized analysis," but the questions that they offer as examples are either questions that can be asked on a classwide basis, *id.* ("who told her to come early and stay late"), or go to specific damages, *id.* ("the length of the pre-shift and post-shift time period" and "if each putative class member was also subjected to the same treatment"), or both. As is the case here, "[c]ourts have often found the predominance requirement satisfied despite individual differences in the amount of damages." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 128–29 (S.D.N.Y. 2011) (collecting cases); *see, e.g., Ramos v. SimplexGrinnell LP*, 796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011) ("numerous courts have found that wage claims are especially suited to class litigation—perhaps 'the most perfect questions for class treatment'— despite differences in hours worked, wages paid, and wages due") (quoting *Iglesias– Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007)), *vacated in part on other grounds*, 773 F.3d 394 (2d Cir. 2014).

### f. Superiority

Finally, to demonstrate that a class action is superior to other available methods, courts must consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class

30

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). "Courts regularly find that where the proposed class 'is significantly numerous and possesses relatively small individual claims' and 'many potential class members are foreign-born, have limited reading and writing skills, and may fear reprisal from Defendants,' a class action is both 'cost-efficient and fair' and 'likely the only device by which many of the proposed class members would obtain relief.'" *Cazares v. AVA Rest. Corp.*, No. 15-CV-477 (KAM) (RML), 2017 WL 1229727, at *8 (E.D.N.Y. Mar. 31, 2017) (quoting *Moreira v. Sherwood Landscaping Inc.*, No. 13-CV-2640 (AKT), 2015 WL 1527731, at *15 (E.D.N.Y. Mar. 31, 2015)). Specifically, "class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013).

As previously discussed, the proposed class is numerous, with some having minimal English-language skills, and many remaining employed by Defendants. *See supra* at II.B.2.b. Additionally, the Court has already conditionally certified Plaintiffs' FLSA claims, *Benavides*, 166 F. Supp. 3d at 476–77, and there is "overwhelming precedent in the Second Circuit supporting certification of simultaneous NYLL class actions and FLSA collective actions." *Damassia*, 250 F.R.D. at 164; *see also Fonseca v. Dircksen & Talleyrand Inc.*, No. 13-CV-5124 (AT), 2015 WL 5813382, at *6 (S.D.N.Y. Sept. 28, 2015). Defendants' sole argument on

31

this point is simply to repeat that the "significant number of necessarily individualized inquiries into Serenity Spa's potential liability" defeats superiority, but this argument does not address the core factors that inform the superiority inquiry, and has been previously considered and rejected by the Court. *See supra* at 23, 30–31.

For these reasons, the Rule 23(a) and Rule 23(b) requirements have been met, and Plaintiffs' motion for class certification is granted.

### g. Appointment of Class Counsel

"[A] court that certifies a class must appoint class counsel," and "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(B).

Plaintiffs have requested that the Court designate their attorneys, Lee Litigation Group, PLLC, as counsel for the class. Pl. Mem. at 22. Their attorneys have sufficient experience with wage-and-hour matters, including class action lawsuits. Declaration of C.K. Lee, dated Aug. 31, 2016 ("Lee Decl."), Dkt. No. 74, ¶¶ 3, 6–9. Defendants do not contest that Plaintiffs' counsel is qualified to assist with this litigation. As demonstrated from their handling of this and other similar cases,

32

they are familiar with the applicable law, and are therefore qualified to represent the proposed class. *See, e.g., Sanchez*, 2017 WL 2799863, at \*7–9; *Gomez*, 2017 WL 129130, at \*9.

Moreover, Plaintiffs' counsel has represented Plaintiffs since at least the initiation of this action, as they submitted the original complaint, and they are "willing and able to commit the necessary resources to represent the class." Lee Decl. ¶ 9. Accordingly, Lee Litigation Group, PLLC is hereby appointed as counsel for the class.

### h. Proposed Notice to Class Members

Plaintiffs have submitted a proposed class notice pursuant to Fed. R. Civ. P. 23(c)(2). Lee Decl. Ex. 1. They have not represented to the Court that Defendants were involved in the drafting of the proposed notice, and Defendants have not addressed its sufficiency in their motion papers. *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07-CV-2579 (HB), 2008 WL 938584, at \*4 (S.D.N.Y. Apr. 7, 2008) ("notice should be jointly prepared"). Accordingly, the Court directs the parties to meet and confer on the form of the notice and the manner of its dissemination. *See Fonseca*, 2015 WL 5813382, at \*7 (citing *Flores*, 284 F.R.D. at 131–32). After conferring, the parties must then submit a joint proposed notice to the Court for approval within 14 days of the date of this Memorandum Opinion and Order. The proposal should include a proposed notice and procedures for dissemination, so that the Court can ensure that the content and distribution of the notice is "timely, accurate, and informative." *Flores*, 284 F.R.D. at 131. Alternatively, if the parties

cannot come to an agreement, they are directed to submit competing proposed notices within the court-ordered time frame.

## C.    The Court Denies the Motion for Summary Judgment

Plaintiffs have moved for summary judgment concurrently with their motion for class certification. In addition to claiming that there remain material disputes of fact that preclude summary judgment, Defendants object to the Court adjudicating the motions concurrently. Defendants contend that it was procedurally inappropriate for Plaintiffs to move at this stage, when the FLSA collective class was still open, such that summary judgment would "relieve Plaintiffs[s] of [their] burden at the decertification stage entirely." Opp. Mem. at 22. Further, summary judgment would "deny Defendants' opportunity and right to conduct further discoveries [sic] on potential opt-in class members and to explore, discover, and establish an evidentiary basis for their defenses and meaningfully address the issues relevant to Defendants' anticipated motion to decertify the collective class." *Id.* at 22–23. In their reply, Plaintiffs do not address Defendants' objections to proceeding with summary judgment at this stage.

Although Defendants cite no authority for their contention that the timing of Plaintiffs' motion is procedurally improper, there is substantial support for the proposition that proposed class members should be given the opportunity to opt out of a class before summary judgment is determined. Typically, "'a Court's decision on the merits should not ordinarily occur before or simultaneous with a decision on class certification.'" *In re Cablevision Consumer Litig.*, No. 10-CV-4992 (JS) (AKT),

34

2014 WL 1330546, at *15 (E.D.N.Y. Mar. 31, 2014) (quoting *Cuzco v. Orion*

*Builders, Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009)); *see, e.g., Seekamp v. It's Huge,*

*Inc.*, No. 09-CV-18 (LEK), 2012 WL 860364, at *13 (N.D.N.Y. Mar. 13, 2012); *Larsen*

*v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 193–96 (E.D.N.Y. 2006).

> [W]hen a plaintiff in a class action moves for summary
> judgment, 'there could be some unfair prejudice to the
> defendant if a class is certified, and notices sent to
> putative class members, after a judgment on the merits
> has been entered in favor of the class. At least in theory,
> some of the class members might have opted out, had they
> received notice of the action prior to the judgment on the
> merits, but would be less likely to do so if they know that
> the court has already ruled in favor of the class on some
> issues.'

*Cablevision*, 2014 WL 1330546, at *15–16 (quoting *Mendez v. The Radec Corp.*, 260

F.R.D. 38, at 48 (W.D.N.Y. 2009)). Courts have recognized exceptions to this

general rule, particularly where the defendant has moved for summary judgment,

has cross-moved for summary judgment, or has waived any objection to plaintiff's

class certification motion. *See, e.g., Vu v. Diversified Collection Servs., Inc.*, 293

F.R.D. 343, 351 (E.D.N.Y. 2013) ("the parties have raised no objections to the court's

simultaneous consideration of the motions"); *Cuzco*, 262 F.R.D. at 336 ("[B]ecause

Defendants in this case did not raise any objection to Plaintiffs' simultaneous

motions, and in fact themselves cross-moved for summary judgment on both the

FLSA and NYLL claims, Defendants have arguably waived any objection to a

Court's simultaneous decision on the merits."); *Mendez*, 260 F.R.D. at 45 (W.D.N.Y.

2009) ("there is authority that a defendant can waive any objection to a decision on

35

the merits prior to, or simultaneous with, a decision on class certification")
(collecting cases).

Here, Defendants have not cross-moved for summary judgment, and have
clearly argued that Plaintiffs' summary judgment motion is premature—and it is
Defendants' interest that is protected by allowing for notices to proposed class
members to go out before a decision on the merits. *See R. A-G ex rel. R.B. v. Buffalo
City Sch. Dist. Bd. of Educ.*, No. 12-CV-960 (WMS), 2013 WL 3354424, at *4
(W.D.N.Y. July 3, 2013) ("the purpose of early certification is for the benefit of
defendants"), *aff'd,* 569 F. App'x 41 (2d Cir. 2014). Additionally, Plaintiffs
themselves have expressed an interest in further discovery in light of the
submission of the declarations of five current Serenity Spa NY employees that
Defendants included in their opposition to Plaintiffs' motions. Pl. Nov. Letter.[7]
Where the parties require additional discovery, motions for summary judgment
have been held in abeyance. *See Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142,
2017 WL 1155398, at *18 (E.D.N.Y. Mar. 27, 2017).

Therefore, the Court denies Plaintiffs' motion for summary judgment without
prejudice to renewal following the close of discovery.[8]

---

[7] Moreover, Plaintiffs filed an untimely declaration from Lin in support of their
motions, given that the briefing schedule ended prior to Lin's consent to become a
party plaintiff. Denying Plaintiffs' motion would allow for additional development
of the record with regard to this newly-named plaintiff, as Defendants have
requested. Opp. Mem. at 22.

[8] While it is true that there are a number of issues that Defendants do not contest –
such as their joint and several liability under the FLSA and NYLL – the Court

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is granted.

The Court certifies the following class under Federal Rule of Civil Procedure

23(b)(3):

> All former and current non-exempt employees, including
> nail technicians (a.k.a. manicurists), massage therapists,
> aestheticians (a.k.a. facialists), eyelash stylists, and
> waxers, employed by Serenity Spa NY Inc. and Yu Qun
> Dai at Serenity Spa NY located at 1397 Third Avenue,
> New York, NY 10075 on or after November 20, 2009.

The Court further approves Lee Litigation Group, PLLC as designated class

counsel, and designates Gloria Benavides as a class representative. The Court will

determine whether Fanny Yin-Fang Lin can also be designated as a class

representative on a more developed record (and where a formal application to that

effect is made).

The parties are directed to meet and confer and submit to the Court a

mutually agreed-upon notice within 14 days of the date of this Memorandum

Opinion and Order (or competing proposals if they cannot agree).

Further, Plaintiffs' motion for summary judgment is denied without

prejudice. Any additional motion practice shall follow after the class has received

notice consistent with Rule 23 and has been provided with an opportunity to opt out

of the suit, and any additional discovery is complete.

---

believes it would be more efficient to resolve all issues in the context of a renewed
summary judgment motion once any additional discovery is completed.

37

Finally, the Court will hold a status conference on **October 6, 2017, at 11:00 a.m.** to chart the further course of this litigation.

The Clerk is directed to close Docket Numbers 71 and 75.

**SO ORDERED.**

Dated: September 1, 2017
      New York, New York

JAMES L. COTT
United States Magistrate Judge